# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANTHONY McKINNON, # 369-987, 2106047, &ast;

Plaintiff,  &ast;

v.  &ast;    Civil Action No. PWG-17-1428

JANICE GILMORE, R.N.,[1]  &ast;
BEVERLY McLAUGHLIN, R.N.P.,
DR. AGRAWAL, and  &ast;
WEXFORD HEALTH SOURCES, INC.,
 &ast;
Defendant.
   &ast;&ast;&ast;

## MEMORANDUM OPINION

Plaintiff Anthony McKinnon is incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland. Am. Compl. 1, ECF No. 4. He alleges that he submitted multiple requests to see medical personnel at WCI, and after they were "disregarded or ignored," his finger "became infected and swollen." *Id.* Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983 for alleged Eighth Amendment violations by Registered Nurse Janice Gilmore, Registered Nurse Practitioner Beverly McLaughlin, Wexford Health Sources, Inc.[2] and "Dr. Agrawal," an outside physician. Pending is a Motion to Dismiss or, in the alternative, for Summary Judgment filed by Registered Nurse Janice Gilmore, Registered Nurse Practitioner

---

[1] The Clerk shall amend the docket to reflect that Janice Gilmore and Beverly McLaughlin are Defendants in this case.

[2] Defendant Wexford Health Sources, Inc. ("Wexford") was previously dismissed from this case. ECF No. 3. However, when Mr. McKinnon amended his complaint, he again included Wexford. Am. Compl. 1. As stated in my prior Order, ECF No. 3, redress pursuant to 42 U.S.C. § 1983 does not permit recovery under a theory of vicarious liability such as respondeat superior. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Mr. McKinnon's Amended Complaint does not raise an alternative theory of liability, and therefore, his claims against Wexford again will be dismissed. *See id.*

Beverly McLaughlin, and Wexford Health Sources, Inc. Defs.' Mot. 17. On November 21, 2017, the Clerk of the Court informed Mr. McKinnon that these Defendants filed a dispositive motion; that he had seventeen days in which to file a written opposition to the motion; and that if he failed to respond, summary judgment could be entered against him without further notice. *See* ECF No. 18; *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Mr. McKinnon has not responded. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2016). Defendants' motion, construed as a motion for summary judgment, will be granted.[3] Plaintiff's Eighth Amendment claims for deliberate indifference against Defendants RN Gilmore, RNP McLaughlin, and Wexford Health Sources, Inc. are dismissed with prejudice. Mr. McKinnon has failed to state a claim against Dr. Agrawal for an Eighth Amendment violation, and therefore, that claim is dismissed without prejudice. To the extent Mr. McKinnon stated a claim under state law against Dr. Agrawal, I decline to exercise supplemental jurisdiction and that claim also is dismissed without prejudice.

---

[3] Because the Defendants filed a motion to dismiss or in the alternative for summary judgment, Plaintiff was on notice that the Court could treat the motion as one for summary judgment and rule on that basis. "[T]he Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue,* No. DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.,* No. CCB–12–3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985)). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998). Here, the title of the motion itself, "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," makes it obvious that the Court might construe it as seeking summary judgment, and thereby provides sufficient notice to Plaintiff. *See Ridgell,* 2012 WL 707008, at *7; *see Laughlin,* 149 F.2d at 260–61.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material. *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see also* Fed. R. Evid. 401 (defining relevance). "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*,

No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit that "set[s] out facts that would be admissible in evidence" or other similar facts that could be "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2), (4); *see also Ridgell,* 2012 WL 707008, at *7; *Laughlin,* 149 F.2d at 260–61.

Defendants have attached to their motion an affidavit and verified Medical Records. Med. R., ECF No. 17-4; Joubert Aff., ECF No. 17-5. In contrast, Mr. McKinnon has not filed an opposition or an affidavit and his allegations are contained in an unverified complaint. Because Plaintiff's Complaint is not verified, its factual assertions may not be considered in opposition to Defendants' motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

## Background

On January 16, 2017, Mr. McKinnon was seen by Registered Nurse Stacie Mast, and was complaining of a swollen pointer finger on his left hand. Med. R. 2. He stated that his finger

4

"just swelled up one day" and that he had not hurt it. *Id.* McKinnon was referred to a provider for further evaluation. *Id.* On January 26, 2017, RNP McLaughlin examined Mr. McKinnon and ordered an x-ray to be taken of his finger and a follow-up appointment in a week.[4] *Id.* at 4–5. RNP McLaughlin and Dr. Akal next examined Mr. McKinnon on February 23, 2017, and because they were concerned that the growth on his finger may have been malignant, they referred Mr. McKinnon for a consultation regarding a possible biopsy and excision of the mass on his finger. *Id.* at 9–10. Mr. McKinnon was provided an antibiotic; however it did not provide relief. *Id.* at 13.

Mr. McKinnon was examined by Dr. Agrawal, an outside surgeon, on March 20, 2017, and diagnosed the condition as "probably" being a tumor. *Id.* Dr. Agrawal noted that "removal of [the] tumor may compromise the finger movement." *Id.* Based on Dr. Agrawal's recommendation, Mr. McKinnon was referred to a hand specialist, which was approved on April 20, 2017. *Id.* at 16, 18–19. On May 17, 2017, Mr. McKinnon informed Physician Assistant Terri Pryor that Tramadol[5] had been "somewhat effective for pain in [his] finger" and PA Pryor noted that Mr. McKinnon should continue using Tramadol at least until he was seen by a hand specialist. *Id.* at 22–23.

On May 25, 2017, McKinnon saw Doctor Emme Chapman-Jackson, a hand specialist, at Western Maryland Health System. *Id.* at 24. Dr. Chapman-Jackson diagnosed the mass as an inclusion cyst and recommended removing it under local anesthesia. *Id.* Mr. McKinnon stated that he was too anxious for local anesthesia and requested he be sedated for the procedure. *Id.* Surgery was approved on June 8, 2017. *Id.* at 28. He received a pre-operative physical on June

---

[4] There is no indication in the record that a follow-up appointment occurred one week later.
[5] Tramadol is a "narcotic-like pain reliever . . . used to treat moderate to severe pain." *Tramadol*, Drugs.com, https://www.drugs.com/tramadol.html (last visited April 26, 2018).

19, 2017, and was cleared for surgery. *Id.* at 31–32. After his surgery on July 10, 2017, Mr. McKinnon was admitted to the prison infirmary for observation and discharged on July 11, 2017. *Id.* at 34–42. He received help with dressing the site and was given pain medications for two-weeks. *Id.* at 43–45. Orthopedic surgeon Roy Carls examined Mr. McKinnon on August 31, 2017, and observed that Mr. McKinnon had good hand function and a well healed but sensitive scar. *Id.* at 52.

**Analysis**

*Claims Against Defendants Janice Gilmore and Beverly McLaughlin*

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively viewed, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To meet the

objective requirement, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (holding that the focus should be on the precautions actually taken in light of the known risk, not those that could have been taken), *see*

*also Jackson v. Lightsley*, 775 F.3d 170, 179 (4th Cir. 2014) (prescribing treatment raises fair inference that physician believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 525–26 (4th Cir. 2013) (holding that an inmate pleaded a claim for deliberate indifference when the prison would not evaluate her for surgery that was an approved treatment for her serious medical need despite her repeated complaints regarding the ineffectiveness of her current treatment). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir. 1977).

Mr. McKinnon's Amended Complaint alleges that the medical staff "refused to do anything[, his] finger is now permanently injured[,] and [he is] in constant pain." Am. Compl. 3. Objectively, a potentially malignant cyst is a serious medical condition. However, Plaintiff has not demonstrated that medical personnel were subjectively indifferent to him. Mr. McKinnon's Amended Complaint does not describe any specific actions or inactions taken by Defendants RN Gilmore and RNP McLaughlin, but rather in conclusory fashion states they "refused to do anything." To the contrary, the record demonstrates that Defendants RN Gilmore and RNP McLaughlin as well as other non-party medical personnel ensured Mr. McKinnon was provided medical care for the cyst on his finger to include its removal after less intrusive means (e.g. monitoring and medication) proved unsuccessful. Therefore, Mr. McKinnon has not demonstrated that RN Gilmore and RNP McLaughlin were subjectively indifferent to his medical needs. *See Gregory v. Prison Health Servs., Inc.*, 247 F. App'x 433, 435 (4th Cir.

2007) (holding that medical personnel did not have the "the necessary state of mind to support a viable § 1983 claim" when they saw him the day he injured his wrist, referred him to an orthopedic specialist in a timely fashion, provided surgery "after less-intrusive means of treatment failed, and was seen approximately twenty-four times for treatment of his injury").

The Eighth Amendment does not guarantee that prisoners will receive the health care of their choice or the medications they prefer, but only that serious medical conditions will not be treated with deliberate indifference. At most, Mr. McKinnon complaint may be considered a disagreement with the medical personnel overseeing his treatment. *See Russell v. Sheffer*, 528 F.2d 318, 318–19 (4th Cir. 1975) (holding that "mistreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim under § 1983" and that "[q]uestions of medical judgment are not subject to judicial review"); *Williams v. Corizon Med. Serv.*, DKC-12-2121, 2013 WL 4541684, at *7 (D. Md. Aug. 26, 2013) ("Disagreement with a medical provider does not amount to a violation of constitutional magnitude. An inmate's difference of opinion over matters of expert medical judgment or a course of medical treatment does not rise to the level of a constitutional violation.") (citing *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010)). Although he alleges he is in pain, Defendants and other medical personnel have prescribed and continue to prescribe him medications for pain relief. *See, e.g.*, *id.* at 22–23, 44, 49.

Absent admissible evidence that sufficiently contradicts Defendants' evidence or creates a genuine dispute of material fact, I find that Defendants Janice Gilmore and Beverly McLaughlin were not deliberately indifferent towards Mr. McKinnon's medical needs. *See Grayson*, 195 F.3d at 695; *Williams*, 2013 WL 4541684, at *7 (citing *Nelson*, 603 F.3d at 449 (8th Cir. 2010)).

*Claims against Dr. Agrawal*

Mr. McKinnon's Amended Complaint also names Dr. Agrawal and states that Mr. McKinnon "was sent out to be seen by Dr. Agrawell [sic]." Am. Compl. 1, 3. Defendants records and Memoranda indicate he is a surgeon, Med. R. 13, 16, and Mr. McKinnon alleges in his Original Complaint that he was sent outside the jail to be seen by Dr. Agrawal, Compl. 2, ECF No. 1. It does not appear that Dr. Agrawal has been served in this matter and he certainly has not responded to the Amended Complaint or moved to dismiss it. But the Court is obligated to review Mr. McKinnon's Amended Complaint *sua sponte* to determine if he stated a claim against Dr. Agrawal. 28 U.S.C. § 1915(e)(2). There is no indication in the record that Dr. Agrawal is employed by, or under contract with, the State of Maryland with regard to the delivery of prisoner health care. Although a private physician who is not employed by the State or under contract with it may be liable to suit as a state actor pursuant to § 1983, *Connor v. Donnelly,* 42 F.3d 220, 225 (4th Cir. 1994), Mr. McKinnon's allegations fail to state a claim for deliberate indifference as he was seen once by Dr. Agrawal. Med. R. 13. Mr. McKinnon only alleges that he was sent out to see Dr. Agrawal and the records indicate Dr. Agrawal recommended that Mr. McKinnon see a hand specialist to remove what was believed to be a tumor. *See* Med. R. 13, 16. Mr. McKinnon has not alleged any facts that give rise to a subjective indifference to his condition by Dr. Agrawal, and therefore, his Eight Amendment claim will be dismissed. *See Grayson*, 195 F.3d at 695; *Williams*, 2013 WL 4541684, at *7 (citing *Nelson*, 603 F.3d at 449 (8th Cir. 2010)).

To the extent that Mr. McKinnon may have a state law claim against Dr. Agrawal, that claim will be dismissed without prejudice. When a district court "dismisse[s] all claims over which [it] enjoys original jurisdiction," as I have done by dismissing Plaintiff's § 1983 claims, it

"may decline to exercise supplemental jurisdiction" over remaining state-law claims. 28 U.S.C. § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Having dismissed all of Plaintiff's § 1983 claims for which this Court has original jurisdiction, I will decline to exercise supplemental jurisdiction over the remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3).

**Conclusion**

Mr. McKinnon's claims against Defendant Wexford Health Sources, Inc. are dismissed with prejudice. *See Love-Lane*, 355 F.3d at 782 (4th Cir. 2004); *Foman v. Davis*, 371 U.S. 178, 182, (1962) (noting that reasons to deny leave to amend include, *inter alia*, "futility of amendment"). Defendants RN Gilmore and RNP McLaughlin have provided constitutionally adequate medical care with regard to Mr. McKinnon's cyst, and are entitled to summary judgment in this case. Mr. McKinnon's claim against Dr. Agrawal also fails to state a claim for deliberate indifference and will be dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2). Lastly, as I have declined to exercise supplemental jurisdiction for the state law claim against Dr. Agrawal that claim will be dismissed without prejudice. A separate order follows.

| | |
|---|---|
| April 30, 2018 | /S/ |
| Date | Paul W. Grimm |
| | United States District Judge |

11